IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HUMANIGEN, INC.,[1] | Case No. 24-10003 (___) |
| Debtor. | |

**DECLARATION OF MATT LOCASCIO IN SUPPORT OF
MOTION OF DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING,
GRANTING SENIOR POST-PETITION SECURITY INTERESTS AND ACCORDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO
SECTIONS 364(C) AND 364(D) OF THE BANKRUPTCY CODE, (II) MODIFYING
THE AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF**

I, Matt LoCascio, hereby declare under penalty of perjury as follows:

1. I am a principal of SC&H Group ("**SC&H**"). I maintain an office at 6011 University Blvd., Suite 490, Ellicott City, Maryland 21043. I am a FINRA Registered Investment Banking Representative (Series 79).

2. I submit this declaration (the "**DIP Declaration**") in support of the *Motion of Debtor for Entry of an Order (I) Authorizing the Debtor to Obtain Post-Petition Financing, Granting Senior Post-Petition Security Interests and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) And 364(d) of the Bankruptcy Code, (II) Modifying the Automatic Stay, and (III) Granting Related Relief* (the "**Motion**")[2] submitted concurrently herewith. I am over 18 years of age and competent to make this DIP Declaration and testify to the facts set forth herein.

---

[1] The Debtor's mailing address in this chapter 11 case is 533 Airport Boulevard, Suite 400, Burlingame, CA 94010 and the last four digits of the Debtor's federal tax identification number are 7236.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

3. SC&H has substantial experience in M&A transactions around the country, including in distressed situations. SC&H has completed over 600 transactions throughout the country, with approximately half of these transactions approved by Bankruptcy Courts in 72 different districts. SC&H has extensive experience in the life science industry, including with respect to the unique market and regulatory issues involved in the marketing and sale of a pharmaceutical company.

4. The Debtor engaged SC&H on October 13, 2022 to evaluate market interest in the Debtor as a going concern and identify potential equity investors or purchasers of substantially all of the Debtor's assets. At all relevant times SC&H has been working with, and reporting to, a special committee of the Debtor's Board of Directors (the "**Special Committee**") that consists of two independent directors, one of which is a former Bankruptcy Judge. The DIP Lender is not part of, or subject to the discussions of, the Special Committee.

5. SC&H conducted a broad marketing process based on detailed discussions with the Debtor and its advisors, our understanding of the Debtor's highly-specialized assets, and our knowledge of this marketspace. Using proprietary research tools and methods, SC&H identified 101 potential strategic partners based on their industry, size, acquisition history, and potential strategic angle. This list was supplemented with an additional 55 parties that the Debtor's management believed may also have an interest in a transaction with the Debtor.

6. SC&H prepared marketing materials that included an investment teaser and confidential information memorandum to highlight the Debtor's value proposition and present a favorable narrative for pursuing a transaction. We conducted an outreach campaign that involved direct calls and emails to the groups identified, sending nondisclosure agreements ("**NDAs**") to

113 prospective bidders. SC&H continued to follow up with these groups throughout the process and fielded questions about the Debtor and process from interested parties.

7. In total, 14 groups signed NDAs and the Debtor's management conducted meetings with nine separate groups at the JP Morgan Healthcare Conference in San Francisco, CA in January 2023. This led to additional in-person meetings and video calls with the more interested prospects and after a commercially reasonable marketing effort and adequate exposure of the opportunity, we are confident that any and all prospects were made aware of the chance to submit an offer for consideration.

8. Ultimately, the Debtor received two (2) indicative non-binding term sheets: one from the DIP Lender and the other from an unrelated third-party. Neither potential purchaser was willing to provide adequate post-petition financing on an unsecured basis. The offer from the unrelated third-party did not contain more favorable economic terms than the DIP Loan. Regardless, the other non-binding term sheet was withdrawn during the negotiation process. Accordingly, the Debtor was left with no other option other than the non-binding term sheet from the DIP Lender, and the Special Committee moved forward with negotiating a binding letter of intent and term sheet with the DIP Lender. The Special Committee, with the assistance of its professionals, on the one hand, and the DIP Lender, on the other hand, engaged in several rounds of back and forth rounds of negotiation on a final binding letter of intent and term sheet. I believe that the Special Committee used its best business judgment to obtain the best financing terms possible with the DIP Lender, which offers the Debtor access to much-needed liquidity on below-market terms, and without the fees that customary in many post-petition financing arrangements, with the exception of one exit fee of 5% only payable upon funding in full of the DIP Loan.

9. In sum, based on my experience in this industry, my review of the Debtor's books and records, and SC&H's exhaustive efforts to effectuate a strategic transaction involving the Debtor, I believe that (i) the proposed DIP Loan represents the best and only possible postpetition financing option currently available to the Debtor, (b) the terms of the proposed DIP Loan are fair and customary for this type of financing, which are well below market; and (iii) absent approval of the proposed DIP Loan, the Debtor's going concern value and the proposed Sale will be at risk.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: January 4, 2024                                          */s/ Matt LoCascio*
                                                                Matt LoCascio
                                                                Principal