## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| HUMANIGEN, INC. [1] | Case No. 24-10003 (BLS) |
| Debtor. | **Hearing Date: January 19, 2024 at 11:00 a.m.**<br>**Objection Deadline: January 17, 2024 at 4:00 p.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF DEBTOR FOR ENTRY OF (I) AN ORDER (A) APPROVING BID PROCEDURES IN CONNECTION WITH THE POTENTIAL SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) SCHEDULING AN AUCTION AND A SALE HEARING, (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) AUTHORIZING THE DEBTOR TO ENTER INTO THE STALKING HORSE AGREEMENT, (E) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (F) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (C) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), through his counsel, hereby objects (the "Objection") to *the Motion of Debtor for Entry of (I) an Order (A) Approving Bid Procedures in Connection With the Potential Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction and a Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtor to Enter Into the Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C)*

---

[1]   The Debtor's mailing address in this chapter 11 case is 533 Airport Boulevard, Suite 400, Burlingame, CA 94010 and the last four digits of the Debtor's federal tax identification number are 7236.

*Granting Related Relief* (Docket No. 10) (the "Motion"), and in support of that objection states as follows:

## PRELIMINARY STATEMENT

1.        The Motion seeks approval of bid procedures to implement rushed sale of substantially all of Humanigen's assets to stalking horse Taran Therapeutics, Inc. for a credit bid of $2 million. Taran, also the DIP lender, is an acquisition company created by Dr. Cameron Durrant, who has been Humanigen's CEO since late 2015. As part of the bid procedures, Humanigen seeks authority to pay Taran an expense reimbursement of $100,000 if it is outbid at auction, and to have the sale approved by February 16, 2024. As an entity with the benefit of Dr. Durrant's more than eight years of knowledge of Humanigen, Taran should not receive expense reimbursement—it did not need any incentive to bid and had no need to conduct extensive due diligence. Further, Humanigen wants this Court to approve a sale of the majority of its assets, including all potential chapter 5 causes of action against Dr. Durrant in what amounts to a release, six weeks after it filed bankruptcy and less than a month after the U.S. Trustee formed the Committee for a $2 million credit bid by, effectively, Dr. Durrant. This is not enough time for the Committee or any other party in interest to evaluate whether these causes of action have value that could be returned to unsecured creditors if they were pursued, rather than sold. The U.S. Trustee therefore requests that this Court deny the Motion.

## JURISDICTION

2.        Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this Objection.

3.       Under 28 U.S.C. § 586(a)(3), the U. S. Trustee is charged with administrative

oversight of the bankruptcy system in this District. Such oversight is part of the U. S. Trustee's

overarching responsibility to enforce the laws as written by Congress and interpreted by the

courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems,*

*Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U. S. Trustee has "public interest

standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v.*

*Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S.

Trustee as a "watchdog").

4.       Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues

raised by this Objection.

## **BACKGROUND**

5.       On January 3, 2024, Humanigen, Inc. ("Humanigen") filed a voluntary petition

for relief under Chapter 11 of the Bankruptcy Code. Humanigen continues to operate its business

as a debtor-in-possession under 11 U.S.C. §§1107 and 1108.

6.       On January 16, 2024, the U.S. Trustee appointed an Official Committee of

Unsecured Creditors in this case.

7.       Also on January 3, 2024, Humanigen filed the Motion, which seeks, among other

things, approval of bid procedures for the sale of substantially all of Humanigen's assets through

a bidding and auction process. The proposed bidding procedures include an expense

reimbursement of up to $100,000, payable to Taran in the event it is outbid at the Auction.  *See*

Motion, p. 16

8.       In the Motion, Humanigen requests that the Court establish February 7, 2024 as

the deadline for interested parties to submit a bid for the purchase of Humanigen's assets,

schedule an auction for February 12, 2024, and schedule February 16, 2024 as the hearing to consider approval of the proposed sale.  Motion, ¶17.

9.      The stalking horse, Taran Therapeutics, Inc., is an acquisition vehicle formed by Dr. Durrant, Humanigen's CEO. Taran also received interim approval to provide up to $2 million in debtor-in-possession financing to Humanigen. Under the proposed Stalking Horse Agreement, Taran will acquire substantially all of Humanigen's assets through a credit bid of the DIP obligations, along with certain cure costs and future milestone payments if Humanigen achieves various FDA or international regulatory approval targets. Included in the assets to be sold are all of Humanigen's chapter 5 causes of action, specifically including any potential causes of action against Dr. Durrant. *See* Stalking Horse Agreement attached to as Exhibit A to the Motion (DI 10), Articles I and II.

## ARGUMENT

### Objection to the Expense Reimbursement

10.     The U.S. Trustee objects to the Motion because the expense reimbursement is unreasonable and inappropriate under relevant Third Circuit law. In particular, the Court should not permit Taran to receive any expense reimbursement, because it is Humanigen's secured DIP lender and owned by Dr. Cameron Durrant, Humanigen's CEO.

11.     To award a break-up fee or expense reimbursement to a potential bidder, the court must determine that the fee was an actual and necessary cost and expense of preserving the estate.  *See In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999). In *O'Brien*, the Third Circuit Court of Appeals held that "the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Id.* at 535.

12.     The burden is on debtors to prove the necessity of, and benefit to the estate from, any proposed breakup fee or expense reimbursement. In addition, although "the considerations that underlie the debtor's judgment may be relevant to the bankruptcy court's determination on a request for break-up fees and expenses, the business judgment rule should not be applied as such in the bankruptcy context." *Id.*

13.     Moreover, as recognized by the Third Circuit in *O'Brien*:

> [E]ven if the purpose for the break-up fee is not impermissible, the break-up fee may not be needed to effectuate that purpose. For example, in some cases a potential purchaser *will bid whether or not break-up fees are offered . . . .* In such cases, the award of a break-up fee cannot be characterized as necessary to preserve the value of the estate.

181 F.3d at 535 (emphasis added).[2]

14.     That is the situation presented here. As the DIP lender, as well as being an entity affiliated with Dr. Durrant, who himself has been CEO and board president of Humanigen since 2015, Taran would have made a bid whether or not an expense reimbursement was offered, because, regardless of the outcome of the auction, Taran will benefit. Either Taran will be the winning bidder, or, if it is outbid, the additional proceeds of the sale likely will be used to pay down Taran's secured DIP claim. As Taran did not need an incentive to make the stalking horse bid, the expense reimbursement is not "actually necessary to preserve the value of the estate," as required under *O'Brien.*

15.     Expense reimbursement is sometimes approved to compensate an initial bidder for the time and expense of negotiating an agreement and conducting due diligence in connection therewith. Yet Taran has no need for such compensation, because, as a company formed by Dr. Durrant, Taran has the benefit of his eight years of institutional knowledge gained through his

---

[2] *See also In re Reliant Energy Channelview LP*, 200 F.3d 594 (3d Cir. 2010) (affirming disallowance of retroactive grant of break-up fee that was sought after the stalking horse bidder had bid for the assets).

position as Humanigen's CEO. Taran did not need to undertake any due diligence to make a bid, did not need an incentive to make a bid, and does not need expense reimbursement.

16.     In addition, as DIP Lender, Taran is entitled to "payment of its actual and necessary attorney's fees and expenses for all services rendered prior to and after the Petition Date through the Maturity Date."[3] Permitting Taran to receive additional expense reimbursement as part of the proposed sale appears both unnecessary and redundant.

17.     The expense reimbursement is not truly a bid protection, but rather is a blocking protection. The cost simply makes it more difficult for other bidders to propose a qualified bid in the first instance, let alone to become the winning bidder. In that respect, the expense reimbursement chills the bidding process, which makes that cost impermissible under the *O'Brien* standard.

**Objection to the Abbreviated Time Frame of the Sale Process**

18.     Section 363(b)(1) of the Bankruptcy Code permits a debtor-in-possession to sell property of the estate outside the ordinary course of business. The debtor-in-possession bears the burden of proof to show that the sale is in the best interests of the creditors and the estate:

> "The sale of assets which is not in the debtor's ordinary course of business requires proof that: (1) there is a sound purpose for the sale; (2) the proposed sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the buyer has acted in good faith. The element of 'good faith' is of particular importance as the Third Circuit made clear in *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 149-50 (3d Cir. 1986)."

---

[3]     *Motion of Debtor for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Post-Petition Financing, Granting Senior Post-Petition Security Interests and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (II) Modifying the Automatic Stay, and (III) Granting Related Relief* (the "DIP Motion"), DI 8, p. 9 and *Interim Order (I) Authorizing the Debtor to Obtain Post-Petition Financing, Granting Senior Post-Petition Security Interests and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (II) Modifying the Automatic Stay, and (III) Granting Related Relief* (the "Interim DIP Order"), DI 28, ¶7.

*In re Exaris Inc.,* 380 B.R. 741 (Bankr. Del. 2008) (some citations omitted).

19.     Initially, the Court must determine that the bidding procedures will bring the best and highest price for a debtor's assets. The debtor has the burden of proving that its assets have been fully marketed and that the sale is sufficiently publicized in order to prove that the assets will be sold for a fair and reasonable price. *See In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

20.     The speed at which Humanigen proposes to sell all of its assets, notwithstanding its prepetition marketing process, creates a risk that potential buyers will not be reached, or that all potential purchasers will not have adequate time to perform due diligence, thereby reducing competition for the purchase. The net result will be a reduction in competitive bidding, and, concomitantly, in the proceeds to be realized from the sale of those assets.

21.     This need for speed is also troubling because the assets to be sold include potential claims and causes of action against Dr. Durrant and others. Effectively a release, these claims are being sold outside of the rigorous and extensive mechanics of a chapter 11 plan, and parties in interest, chief among them the recently-formed Committee, have not had and will not have sufficient time to evaluate whether the $2 million credit bid is a fair price for not only Humanigen's assets, but its potential litigation recoveries as well.

22.     The U.S. Trustee leaves Humanigen to its burden and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

**WHEREFORE,** the United States Trustee respectfully requests that this Court deny the Motion for the reasons set forth in this Objection, and award such other relief as this Court deems appropriate under the circumstances.

**Dated:** January 17, 2024

**ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 AND 9**

By:  /s/ Hannah McCollum
Hannah McCollum, Esq.
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
Telephone: 202-573-3275
E-Mail: hannah.mccollum@usdoj.gov