## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HUMANIGEN, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 24-10003 (BLS)<br><br>**Re: D.I. 10**<br><br>**Hearing Date: January 23, 2024 at 2:00 p.m.**<br>**Objection Deadline: January 21, 2024 at 4:00 p.m.** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF DEBTOR FOR ENTRY OF (I) AN ORDER APPROVING BID PROCEDURES IN CONNECTION WITH THE POTENTIAL SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) SCHEDULING AN AUCTION AND A SALE HEARING, (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) AUTHORIZING THE DEBTOR TO ENTER INTO THE STALKING HORSE AGREEMENT, (E) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (F) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (C) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of the above-captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned proposed counsel, Kilpatrick Townsend & Stockton LLP and Womble Bond Dickinson (US) LLP, hereby files this limited objection and reservation of rights (the "Limited Objection") to the *Motion of Debtor for Entry of (I) an Order Approving Bid Procedures in Connection with the Potential Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction and a Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtor to Enter Into the Stalking Horse Agreement, (E) Approving*

---

[1] The Debtor's mailing address in this chapter 11 case is 533 Airport Boulevard, Suite 400, Burlingame, CA 94010 and the last four digits of the Debtor's federal tax identification number are 7236.

*Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Dkt. 10] (the "Motion").[2] In support of this Limited Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Committee is generally supportive of the Debtor's efforts to sell its assets through a sale under section 363 of the Bankruptcy Code, and the Committee seeks to establish a sale process that is most likely to maximize value for the Debtor's estate (the "Estate").  However, the process that is currently proposed is flawed in many respects in that it inappropriately favors Dr. Cameron Durrant, an insider who wears many hats (current CEO, acting CFO, Chairman of the Board, and DIP Lender) and is the target of multiple lawsuits related to the Debtor that allege, among other things, breaches of fiduciary duties, gross mismanagement, abuse of control, and unjust enrichment.  Against this backdrop, it is no surprise that the Committee has major issues with an abbreviated sale process that is designed to sell all of the Estate's assets, including potential claims and causes of action against Dr. Durrant, for *de minimis* consideration.

2.      Since its appointment less than a week ago (and only three business days since the selection of professionals), the Committee has been engaged with the Debtor to address its concerns with the sale and bidding procedures proposed in the Motion (the "Proposed Bidding Procedures") and the Debtor's proposed order on the Motion (the "Proposed Order").  Though the Committee is optimistic that certain of its concerns can be consensually resolved in advance of the hearing on the Motion, the Committee does not anticipate reaching a consensus with the Debtor

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

on two important changes that must be made to improve the sale process. Therefore, the Committee files this Limited Objection to address those issues.

3.    *First*, the abbreviated sale process proposed by the Debtor must be extended to allow for a fulsome postpetition marketing of the assets and the formulation of competitive bids, particularly for parties that were not approached in the prepetition sale process. The current extremely compressed sale process serves only to advance an insider bid from the stalking horse bidder, Taran Therapeutics, Inc. ("Taran" or the "Stalking Horse Bidder"), to the detriment of other creditors.  The Debtor's assets must be meaningfully market-tested, which requires a longer runway for bidders to consider the sale.

4.    The Committee's request for additional time should be given particular weight in this case because the Debtor does not have prepetition secured debt, which makes unsecured creditors the most significant beneficiaries of any value created for the Estate. Concomitantly, unsecured creditors also bear the lion's share of any loss in value to the Estate from a less successful sale process. The Committee appreciates that it is in the best interest of creditors to consummate a sale quickly, but this objective must be balanced against the importance of a competitive sale process to maximize value from the Debtor's assets. After weighing both objectives, and given the one-sided deal terms advanced by the Stalking Horse Bidder, the Committee believes this sale requires more time.  The United States Trustee agrees and has filed an objection that also calls for a longer marketing and sale process.

5.    The Committee expects that the Debtor will argue that an expedited sale process is necessary because the Debtor's liquidity cannot support a longer process.  That position does not hold water.  The Debtor does not have liquidity for a lengthier and more robust process because the DIP Lender, who is also the Stalking Horse Bidder (and current CEO, acting CFO, and

Chairman of the Board), provided the Debtor with only enough liquidity for the truncated process that is being proposed, and nothing more.  And that truncated process inures solely to the benefit of the DIP Lender/Stalking Horse Bidder who will acquire substantially all of the Debtor's assets, *including causes of action against itself.*  The Debtor cannot rely on a liquidity issue as the justification for a highly abbreviated sale process that favors the same party (an insider!) that created the issue in the first place.

6.      *Second*, the bid protections granted to the Stalking Horse Bidder are unwarranted and must be denied. Under the stalking horse agreement (the "Stalking Horse Agreement"), the Debtor would grant the Stalking Horse Bidder an expense reimbursement of up to $100,000, as an administrative expense claim in the event that it is not the successful bidder for the Debtor's assets (the "Expense Reimbursement"). The Stalking Horse Bidder is an insider—it was formed by Dr. Durrant, who currently is serving as the Debtor's CEO, Chairman of the Board, and Acting Chief Financial Officer. Therefore, the Stalking Horse Agreement, including the Expense Reimbursement, must be subjected to increased scrutiny.  The Debtor has not and cannot satisfy that high standard.

7.      Furthermore, the Expense Reimbursement is not necessary to induce Dr. Durrant to submit a bid for the Debtor's assets.  To the contrary, the Stalking Horse Bidder has ample incentive to bid on the Debtor's assets and was able to formulate an informed bid based on Dr. Durrant's many years of institutional knowledge. As a result, bid protections are not appropriate here—they only chill participation by other bidders.  Again, the Committee is aligned with the United States Trustee, who also has objected to the Expense Reimbursement.

8.      Finally, while sale objections are for another day, the Committee has grave concerns with various terms of the bid set forth in the Stalking Horse Agreement (the "Stalking Horse Bid"),

and doubts that it truly is in the best interests of the Estate. Among other problematic terms, the Stalking Horse Bid provides for the purchase of all potential claims and causes of action against the Stalking Horse Bidder and Dr. Durrant without any apparent consideration for such potentially valuable assets. Indeed, the Stalking Horse Bid appears to be a very convenient way for Dr. Durant to extract the most valuable assets from the Estate and neutralize any potential claim against him through a sale process that is too truncated to allow for meaningful competition. Moreover, the Stalking Horse Bid requires the Debtor to pay for the first $650,000 in Cure Costs and is devoid of any funds for an orderly winddown, thereby likely leaving the Estate administratively insolvent following a sale. Simply put, the Stalking Horse Bid is a bad deal for the Estate. Unless the terms of the bid are substantially revised, the Committee intends to object to the Stalking Horse Bid as an inappropriate use of the section 363 sale process.

9.      For these reasons, and as set forth in greater detail below, the Committee requests that the Court condition entry of an order approving the Motion on an extended timeline, as set forth herein, and the removal of any bid protections for the insider Stalking Horse Bidder. Further, to the extent the parties are unable to reach consensual resolution of any of the other issues the Committee has raised with the Debtor, the Committee reserves all of its rights with respect to the Motion, the Proposed Bidding Procedures, and the Proposed Order.

## **BACKGROUND**

10.      On January 3, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business as a debtor-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

11.      Also on January 3, 2024, the Debtor filed the Motion, which seeks, among other relief, approval of the Proposed Bidding Procedures to implement the sale of substantially all of

the Debtor's assets through a bidding and auction process. The Proposed Bidding Procedures provide for the Expense Reimbursement, payable to Taran in the event it is not the winning bidder at the Auction. *See* Motion 16. The Proposed Bidding Procedures also set forth an expedited timeline for the sale process (the "Proposed Sale Timeline"), including, among other key dates: (i) a bid deadline of February 7, 2024; (ii) an auction date of February 12, 2024; and (iii) a hearing date to approve the sale of February 16, 2024. *See* Motion 6.

12.     On January 16, 2024, the United States Trustee for Region 3 appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code.

13.     On January 17, 2024, the Committee selected Kilpatrick Townsend & Stockton LLP as its lead counsel, Womble Bond Dickinson (US) LLP as Delaware co-counsel, and Dundon Advisors, LLC as financial advisor.

14.     On January 18, 2024, the hearing on the Motion was adjourned from January 19, 2024 at 11:00 a.m. (ET) to January 23, 2024 at 2:00 p.m. (ET). *See* Dkt. 58. By agreement between the Committee and the Debtor, the Committee's deadline to object to the Motion was also extended to January 21, 2024 at 4:00 p.m. (ET).

## LIMITED OBJECTION

15.     Prior to filing this Limited Objection, the Committee provided detailed feedback to the Debtor regarding its concerns with the Proposed Bidding Procedures. Though the parties will likely be able to consensually resolve certain of the Committee's issues, and the Committee remains generally supportive of a sale process, the Committee objects to the Motion to the extent it requests approval of the Proposed Sale Timeline and the Expense Reimbursement.

### A.     The Proposed Sale Timeline Must be Extended to Ensure Value is Maximized.

16.     The Proposed Sale Timeline must be extended to provide adequate time for potential bidders to conduct due diligence on the assets, develop an alternative bid, and prepare

the many materials they must submit to become Qualified Bidders. The additional time the

Committee seeks is particularly necessary for potential bidders that did not conduct fulsome due

diligence of the assets during the prepetition sale process or were not involved in that prepetition

process. To ensure that all potentially interested bidders have full opportunity to develop a bid, the

Committee proposes the following modest extensions of certain key events:[3]

| Milestone | Bidding Procedures | Committee's Proposal |
|---|---|---|
| Bid deadline | February 7 | February 20 (+ 13 days) |
| Auction | February 12 | February 23 (+ 11 days) |
| Sale hearing | February 16 | week of February 26 |
| Sale closing | February 20 | March 11[4] or such other date as agreed to by the Debtors, Committee, and Successful Bidder (+ 20 days) |

17.     The Debtor must show that a sale under section 363 of the Bankruptcy Code is in

the best interest of all creditors. *See In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008).

A sale process should be designed to attract the "best price obtainable for creditors." *In re

Bidermann Indus. U.S.A., Inc.*, 547, 552 (Bankr. S.D.N.Y. 1997).  Such a process cannot be simply

"window-dressing" to create the illusion of a competitive sale, *id.*, and must involve adequate time

and effort to identify potential bidders. *See Exaeris*, 380 B.R. at 745.

18.     Here, the Proposed Sale Timeline does not provide adequate time for non-insider

bidders to diligence the Debtor's assets and develop the terms of a purchase offer, which in turn

dampens participation amongst potentially interested parties. Notably, the Committee has

identified several parties that were not previously contacted by the Debtor but that may be

---

[3] The dates listed below concern only the key sale-related deadlines. All other sale-related deadlines (*i.e.*, objection deadlines) will need to be extended to align with the Committee's request.

[4] The Committee's proposed sale closing date comports with the DIP milestones, which requires a closing on or before March 13, 2024.

interested in the Debtor's assets. Additional time is needed to market this sale to those newly identified parties in particular, as well as to parties identified prepetition who may have a renewed interest in the assets due to the unique advantages of a section 363 sale. Under the current Proposed Sale Timeline, prospective bidders would have only 35 days after the Petition Date and 15 days after the hearing on the Motion to conduct all due diligence, secure qualified bidder status, prepare a purchase agreement and necessary ancillary documents, and submit a bid. That is not sufficient time for prospective bidders to navigate this complex sale process.

19.     Greater participation amongst potential bidders in the sale process creates greater potential to increase the value of the Debtor's assets. Thus, expanding the current timeline to encourage robust participation in the sale process furthers the fundamental policy underpinning the Bankruptcy Code: maximizing value for the benefit of all stakeholders. The need for more time is especially critical here where the proposed sale process contemplates an acquisition by an insider in a transaction that effectively provides zero value to unsecured creditors that are owed at least $40 million.  The Committee, therefore, requests an extension of the sale timeline as set forth above. *See e.g.*, Transcript of Hearing on Bidding Procedures at 20:16-20, *In re Energy Future Holdings Corp.*, No. 14-10979-CSS (Bankr. D. Del. Nov. 3, 2014), ECF No. 2699[5] (holding that "…the proposed timelines must be stretched…to allow for sufficient time for any interested party to develop an alternative transaction...").

**B.     Bid Protections for the Insider Stalking Horse Bidder Are Inappropriate, Unnecessary, and Should be Disallowed.**

20.     The Debtor has not met its heightened burden of showing that bid protections for the insider Stalking Horse Bidder are appropriate. The Proposed Bidding Procedures should be

---

[5] This transcript is attached hereto as <u>Exhibit A</u>.

modified to remove the Expense Reimbursement.[6]

21.    In the Third Circuit, approval of bid protections requires the Court to determine that such bid protections are "necessary to preserve the value of the Debtor['s] estate." *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999). To show that proposed bid protections meet this standard, the Debtor must show that the protections operate to (i) induce a bid that would not have otherwise been made or (ii) encourage other bidders to conduct diligence and participate in an auction.  *See In re Energy Future Holdings Corp.*, 990 F.3d 728, 742 (3d Cir. 2021) (elaborating on the standard set forth in *O'Brien*); *see also In re Goody's Fam. Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010) (Showing that payment of bid protections will provide "an actual benefit to the estate" is the debtor's burden.).

22.    When bid protections are proposed in connection with an insider transaction, "[t]he standard for obtaining approval … is especially demanding." Transcript of Oral Ruling at 11:20-22, *In re Ruby Pipeline, LLC*, No. 22-10278-CTG (Bankr. D. Del. Dec. 7, 2022), ECF No. 519[7] (citing *In re Crown Village Farm, LLC*, 415 B.R. 86, 93 (Bankr. D. Del. 2009) ("[T]he sale process will be under the close scrutiny of the Court as required where the stalking horse is an insider[.]")); *see also Pepper v. Litton*, 308 U.S. 295, 307-08 (1939) (rigorous scrutiny required when the debtor's proposal "accrues to the benefit of an officer, director, or stockholder."); *In re Papercraft Corp.*, 211 B.R. 813, 823 (W.D. Pa. 1997), *aff'd and remanded sub nom. Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982 (3d Cir. 1998) ("[I]nsider

---

[6] In addition to the Expense Reimbursement, the Debtor is seeking final approval pursuant to its DIP financing motion [Dkt. 8] of a break-up fee disguised as an exit fee. If approved, this fee, equal to 5% of the DIP obligations, would be payable to Taran in the event the DIP obligations are repaid in cash instead of converted to a credit bid. In other words, the fee will be payable if Taran is not the Successful Bidder. The Committee will object to such relief, if needed, at the appropriate time, but thinks it is relevant to note that the Expense Reimbursement is not the only form of bid protections the Debtor seeks to extend to Taran.

[7] This transcript is attached hereto as <u>Exhibit B</u>.

transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation and those with interests therein."); *In re Philadelphia Newspaper, LLC*, No. 09-11204SR, 2009 WL 3242292, at *12 (Bankr. E.D. Pa. Oct. 8, 2009) ("carefully" and "close[ly] scrutiny[inizing] transaction involving insider and denying proposed break-up fee), *rev'd on other grounds*, 418 B.R. 548 (E.D. Pa. 2009); *Bidermann Indus.*, 203 B.R. at 551-52 (applying heightened scrutiny to insider bid and denying approval of sale and bid protections, finding that they "lacked … both disinterestedness and due care," and "aim[ed] to cut off other possible sales.").

23.    Such a heightened standard is necessary because "[a]n insider that is familiar with the debtor's operations should not be required to incur the expense associated with conducting diligence in a way that a third-party purchaser would" and "likely has sufficient interest in the asset by virtue of its prepetition relationship," both which make it difficult to show that bid protections are truly necessary. Transcript of Oral Ruling at 12:5-10, *In re Ruby Pipeline, LLC*, No. 22-10278-CTG (Bankr. D. Del. Dec. 7, 2022), ECF No. 519[8].

24.    That is the case here. Taran has ample incentive to bid with or without bid protections and is in a position to do so without undertaking any due diligence.

**i.    Taran has Ample Incentive to Bid Without Bid Protections.**

25.    Taran is an acquisition vehicle formed by Dr. Durrant, the Debtor's *current* CEO, Chairman of the Board, and Acting Chief Financial Officer. Taran is also the Debtor's DIP lender. If the Stalking Horse Bid is the winning bid, Dr. Durrant will retain control of the Debtor's

---

[8] This transcript is attached hereto as Exhibit B.

business, and if Taran is outbid, the Stalking Horse Bid will have set the floor for higher bids, the proceeds of which would be used to pay back the DIP loan. In either scenario, Taran will benefit.

26.      Moreover, Dr. Durrant has a uniquely strong incentive to execute the Stalking Horse Agreement even without the Expense Reimbursement because the sale allows Taran and Dr. Durant to purchase all potential claims and causes of action against them, effectively securing a release without meeting the applicable requirements for a release. At least two lawsuits currently are pending alleging various causes of action against Dr. Durant and other Debtor insiders, which makes it all the more important that the Committee has an opportunity to assess the value of such claims before they are released or sold. Though the Committee plans to vigorously object to the sale of any claims or causes of action against Debtor insiders, the Stalking Horse Agreement currently provides for such a sale. Therefore, Taran is amply motivated to purchase the Debtor's assets under the Stalking Horse Bid without any need for the additional incentive of the Expense Reimbursement.

**ii.      Taran is in a Position to Bid Without Conducting Due Diligence.**

27.      Dr. Durrant has been at the helm of the Debtor, in multiple significant roles, for over eight years. He is the party *most* knowledgeable about the Debtor, and Taran has the unique benefit of that knowledge. As a result, Taran surely did not need to undertake significant due diligence prior to making the Stalking Horse Bid. *See* Transcript of Oral Ruling at 14:1-3, *In re Ruby Pipeline, LLC*, No. 22-10278-CTG (Bankr. D. Del. Dec. 7, 2022), ECF No. 519[9] ("[A]n insider does not need to conduct diligence on a company it effectively controls"); *see also In re Dorado Marine, Inc.*, 332 B.R. 637, 639-41 (Bankr. M.D. Fla. 2005) (noting that "[t]he fee is

---

[9] This transcript is attached hereto as <u>Exhibit B</u>.

intended … to encourage the bidder to do the necessary due diligence with the assurance that its efforts will be compensated if it is unsuccessful").

28.     Further, while thorough due diligence by an interested third party may very well be relied on by other potential bidders and increase the ultimate auction value, the same cannot be said for any "diligence" performed by the party currently leading the Debtor's operations. *Compare In re Beth Israel Hosp. Ass'n of Passaic*, 2007 WL 2049881, at *13 (Bankr. D. N.J. July 12, 2007) (denying bid protections, in part, because "the work to prepare the Debtor for sale was largely done by the Debtor's professionals"), *and In re W.P. Hickman Sys., Inc.*, 2009 WL 2593930, at *1 (Bankr. W.D. Pa. Aug. 20, 2009) (denying reimbursement where "the schedules and other disclosures available to potential bidders [were] prepared by the Debtor"), *with Dorado Marine*, 332 B.R. at 639-41 (granting fee, in part, because "[t]his was ***not*** a case in which a debtor or a trustee gathered the information necessary to perform the due diligence in anticipation of the sale") (emphasis added); *see also In re 310 Assocs.*, 346 F.3d 31, 34 (2d Cir. 2003) (the purpose of a stalking horse is that "research, due diligence, and subsequent bid" by stalking horse "may encourage later bidders").

29.     The Expense Reimbursement does not maximize value for creditors—it only increases the cost of an acquisition to other bidders to the advantage of an insider and the *disadvantage* of creditors. *See O'Brien*, 181 F.3d at 535 (bid protections impermissible when they serve to "give an advantage to a favored purchaser over other bidders by increasing the cost of the acquisition."). The Debtor has not and cannot meet its heightened burden to show that bid protections for the insider Stalking Horse Bidder are warranted. The Expense Reimbursement, therefore, must be disallowed.

## RESERVATION OF RIGHTS

30.      Prior to filing this Limited Objection, the Committee provided comments to the Debtor regarding the Bidding Procedures and Proposed Order.  In addition to the issues raised in this Limited Objection, those comments included, among other things: (i) incorporating additional Committee consultation rights, (ii) requiring Committee consent for an extension of the Bid Deadline; (iii) including a post-Auction sale objection deadline; and (iv) reducing the Initial Overbid Amount from $250,000 to $150,000.  On the same day this Limited Objection was due, the Committee received a revised form of Bid Procedures from the Debtor that addresses certain but not all of these additional comments (the Proposed Sale Timeline and Expense Reimbursement issues remain outstanding).  As a result, the Committee reserves all of its rights with respect the Motion, the Proposed Bidding Procedures, and the Proposed Order.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court (i) condition entry of an order approving the Proposed Bidding Procedures on the modifications requested in this Limited Objection; and (ii) grant such other and further relief as the Court deems just and proper.


*[Remainder of Page Intentionally Left Blank]*

Dated: January 21, 2024
     Wilmington, Delaware

*/s/ Donald J. Detweiler*

**WOMBLE BOND DICKINSON (US) LLP**
Matthew P. Ward (DE Bar No. 4471)
Donald J. Detweiler (DE Nar No. 3087)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
Email: matthew.ward@wbd-us.com
       don.detweiler@wbd-us.com

-and-

**KILPATRICK TOWNSEND & STOCKTON LLP**
Gianfranco Finizio (admitted *pro hac vice*)
The Grace Building
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700
Facsimile:  (212) 775-8800
Email: gfinizio@ktslaw.com

-and-

Danielle Barav-Johnson (admitted *pro hac vice*)
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile:  (404) 815-6555
Email: dbarav@ktslaw.com

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors*